IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Craig Leon Avery, )<br>)<br>            Plaintiff, )<br>)<br>    vs. )<br>)<br>Michael J. Astrue, )<br>Commissioner of Social Security, )<br>)<br>            Defendant. )<br>) | Civil Action No. 6:10-3176-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This case is before the court for a report and recommendation pursuant to Local Civil Rule 73.02(B)(2)(a) DSC, concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)) to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits ("DIB") on July 31, 2008, alleging that he became unable to work on January 1, 2008. The application was denied initially and on reconsideration by the Social Security Administration. On February 10, 2009, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff appeared on January 5, 2010, considered the case *de novo*, and on January 29, 2010, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The ALJ's finding became the final decision of the

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

Commissioner of Social Security when it was approved by the Appeals Council on October 15, 2010. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (20 C.F.R. § 404.1571 *et seq.*)
>
> 3. The claimant has the following severe impairment: status-post two right foot surgeries (20 C.F.R. § 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Specifically, the claimant is able to lift and carry up to 10 pounds occasionally and lesser amounts frequently, sit for 6 hours in an 8-hour day, and stand and walk occasionally.
>
> 6. The claimant is unable to perform any past relevant work (20 C.F.R. § 404.1565).
>
> 7. The claimant was born on September 6, 1973 and was 34 years old, which is defined as a younger individual age 18-49, on the amended alleged onset date. (20 C.F.R. § 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 C.F.R. § 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding of "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404. Subpart B, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 404.1569, and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2008, the date of this decision (20 C.F.R. § 404.1520(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## **APPLICABLE LAW**

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §404.1520(a)(4).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and

requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff was 36 years old at the time of the ALJ's decision (Tr. 30, 38). He completed the ninth grade in high school (Tr. 4) and worked as a deliveryman, driver, landscaper, tree service laborer, machinery operator, maintenance worker, mechanic, forklift operator, and warehouse worker (Tr. 136).

In August 2004, the plaintiff fell and broke both of his ankles (Tr. 5). The plaintiff claimed disability due to this accident over three years later, starting on January 1, 2008 (Tr. 24). The ALJ found the plaintiff to have "status-post two right foot surgeries" as a severe impairment (Tr. 26).

In August 2004, the plaintiff had surgery to repair his broken ankles (Tr. 188). The surgery allowed the plaintiff to return to work for over three years. In July 2007, the plaintiff returned to his surgeon, Dr. Jeffrey Holman, with complaints of renewed right ankle

5

pain. An examination found the plaintiff had full range of motion in both ankles, but some foot and ankle pain while flexing. Dr. Holman ordered x-rays, which showed no significant ankle or foot changes, but he eventually treated the plaintiff with a steroid injection (Tr. 183-84).

In September 2008, the plaintiff received an extensive disability examination. Dr. Temisan Etikerentse noted his condition was largely normal, with the exception of tenderness and reduced range of motion in his right foot and ankle. He noted that the plaintiff was not taking any medications (Tr. 188). He found the plaintiff was unable to walk on his heels or toes of his right foot, but that he was able to squat (with some difficulty) and tandem walk without assistance. An x-ray revealed atherosclerosis (an artery block) in his foot and degenerative disease in his right ankle. Dr. Etikerentse noted that the plaintiff was not on any medications for his foot pain. Dr. Etikerentse felt that the plaintiff's symptoms would improve with a more consistent pain medication regimen (Tr. 188-90). Dr. Etikerentse's impression was that the plaintiff would have difficulty with prolonged standing, bending, and walking (Tr. 190).

In an October 2008 functional capacity evaluation, State agency reviewing physician Dr. Seham El-Ibiary opined that the plaintiff was able to lift 50 pounds occasionally and 25 pounds frequently (Tr. 192). She limited the plaintiff from pushing and pulling activities involving his lower extremities and assigned postural limitations including occasional climbing of ladders, ropes, and scaffolds; and occasional balancing and crawling (Tr. 192-93).

In January 2009, the plaintiff returned to Dr. Holman for the first time in 14 months. Dr. Holman noted that the plaintiff had a good range of motion in his right ankle, but had "exaggerated pain to light touch." Dr. Holman noted that there was no evidence of a failure of his foot fusion surgery and recommended the plaintiff return to wearing orthotic footgear in order to avoid more surgery (Tr. 200-01). In February 2009, Dr. Holman again

noted the plaintiff's exaggerated pain to touch and that there was no evidence of any foot problem that would lead to the plaintiff's pain (Tr. 227, 229). The plaintiff refused to return to wearing his orthotic braces and instead requested that Dr. Holman perform another surgery, despite Dr. Holman's recommendation against it (Tr. 226).

In March 2009, Dr. Holman performed a diagnostic surgery and performed some maintenance on the plaintiff's previous surgery (Tr. 211-12, 224-25). Dr. Holman subsequently opined that the plaintiff's ankle and foot appeared "innocuous" and that the plaintiff's pain likely resulted from overuse (Tr. 223). In April 2009, the plaintiff continued to complain of foot pain. Dr. Holman opined that this was a result of wearing a foot brace without arch support. He was given Elavil to help him seel and for pain, and his Darvocet prescription was renewed (Tr. 222). The plaintiff's continued complaints led Dr. Holman to perform a triple fusion surgery in July 2009, to which the plaintiff responded "favorably" (Tr. 216-18). The plaintiff reported that, after his surgery, "pain wise he [was] doing not badly," and he was placed in a walking cast (Tr. 215).

In August 2009, due to his walking cast, the plaintiff developed pain in his left leg as a result of overuse. Dr. Holman recommended continued walking cast use, but the plaintiff refused, and insisted on converting to a walking boot. The plaintiff was told he "should be non-weight bearing on the leg anyway" (Tr. 213). By November 2009, the plaintiff reported that his tibial talar and calcaneal cuboid pain had "improved considerably" and had "much less discomfort"; however, he had worsening ankle and plantar sided heel pain. Overall, the plaintiff thought he was worse than before the surgery, but Dr. Holman stated the plaintiff was off crutches and was ambulating more heavily. He prescribed Flexeril, Voltaren, Lortab, and periodic Ambien (Tr. 230).

In December 2009, the plaintiff again visited Dr. Holman with complaints of increasing pain (Tr. 232). While x-rays of his right foot and ankle were normal (with the exception of some swelling around his joints), Dr. Holman nevertheless opined that he likely

had "[permanent] limitations in his ability to walk or stand for prolonged periods of time" (Tr. 232-33).

On January 5, 2010, the plaintiff testified at an administrative hearing (Tr. 1-15). The plaintiff stated that he quit his maintenance worker job because his ankle pain prevented him from prolonged walking. Specifically, the plaintiff claimed his right ankle and foot were in constant pain, despite surgical corrections. The plaintiff stated that he could stand for 10 to 15 minutes at a time and walk up to 20 or 30 yards before requiring rest. He also claimed that sitting caused pain in his lower back, but that he could sit for an hour as long as he could "turn and twist" (Tr. 5-8). Additionally, the plaintiff testified that he "[couldn't] even pick up a whole pitcher of tea," but did not describe which medical condition or problem contributed to his difficulties in lifting objects (Tr. 8).

The plaintiff testified that he drove for up to three hours out of the week, including picking up his children, going shopping, and going to the doctor's office. He testified that his medications, in combination, made him drowsy (Tr. 8-9). The plaintiff testified that he needed a cane whenever he "went out" (Tr. 11). The ALJ concluded the hearing without examining a vocational expert (Tr. 1-15).

After receiving an unfavorable decision, the plaintiff submitted additional medical records from Dr. Holman to the Appeals Council (Tr. 19). This evidence included medical records from February 2010 through July 2010 (Tr. 234-44).

On February 1, 2010, the plaintiff reported pain; however, Dr. Holman was "unsure about the exact etiology of his pain at this juncture" (Tr. 237). In March 2010, the plaintiff visited Dr. Holman again with complaints of ankle pain (Tr. 236). Dr. Holman noted:

> He has had a flare of right sided foot pain. This was after a mechanical fall reportedly. This is also coincidentally with the turn down of him being "disabled." He is reporting low back pain as well.

> Impression: Query chronic pain versus malingering versus flare of foot pain from recent fall.
>
> Plan: I am taking the gentleman for his word . . . I think at this juncture with his history of continued problems the likelihood that he is going to be able to do any kind of gainful employment that would require him to stand for prolonged periods is quite low. Meanwhile I am going to send him to Voc. Rehab.

(Tr. 236). Dr. Holman recommended the plaintiff obtain a formal diagnosis and treatment for his back pain, but noted the plaintiff's financial concerns regarding that course of action (Tr. 235). In a May 2010 follow-up visit, Dr. Holman opined that "[o]verall [the plaintiff was] doing reasonably well" (Tr. 243).

In June 2010, Dr. Holman noted that "[o]rthopedically speaking I cannot explain something that would explain all of his symptoms" and released the plaintiff with only pain medication for nerve and foot pain (Tr. 242). By July 2010, Dr. Holman noted that the plaintiff had "been doing reasonably well . . . slightly improved from previously" and was walking with a mild to moderate limp without the assistance of a cane or crutches (Tr. 241).

## **ANALYSIS**

The ALJ found that the plaintiff had the following severe impairment: status post two right foot surgeries. He further found the plaintiff had residual functional capacity ("RFC") to perform a full range of sedentary work. The ALJ determined that the Medical-Vocational Guidelines ("the Grids") directed a finding that the plaintiff was not disabled (Tr. 29-30). The plaintiff argues that the ALJ erred by (1) failing to properly consider his subjective complaints; and (2) failing to obtain and consider vocational expert testimony.

*Credibility*

The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

9

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

(1)  the individual's daily activities;

(2)  the location, duration, frequency, and intensity of the individual's pain or other symptoms;

(3)  factors that precipitate and aggravate the symptoms;

(4)  the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

10

>  (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
>  (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
>  (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.

A lack of objective medical evidence may be used as one factor in a credibility analysis, so long as there are other valid reasons to question a claimant's credibility. As the Fourth Circuit Court of Appeals stated in *Craig v. Chater*:

> This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

76 F.3d at 595. *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. § 404.1529(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other

symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

The ALJ found that while the plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, the plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the finding that he could perform a full range of sedentary work (Tr. 28). The ALJ specifically noted that while the plaintiff testified that he is frequently drowsy and forgetful, he failed to complain of those side effects to his treating physician. Thus, the ALJ gave no credit to those allegations (Tr. 28). The failure to report symptoms to his physicians undermined the plaintiff's complaints. *See Flowers v. Apfel*, No. 98-2112, 1999 WL 150491, at *2 (4th Cir. 1999) (unpublished).

Furthermore, the ALJ noted that while the plaintiff might have some limitations due to pain, the evidence of record was not persuasive that he could not perform sedentary work (Tr. 28). Substantial evidence supports that conclusion. The ALJ noted that the evidence showed the plaintiff's complaints of pain were tied to the prolonged use of his feet (Tr. 28). Further, no doctor endorsed the plaintiff's allegations of disabling pain (Tr. 28). To the contrary, every doctor who offered an opinion about the plaintiff's work abilities agreed with the ALJ's assessment that the plaintiff could perform at least a full range of sedentary work (Tr. 182-233). Specifically, in his December 2009 opinion, treating physician Dr. Holman noted the plaintiff "ha[d] limitations in his ability to walk or stand for prolonged periods of time," but did not limit him from sedentary-type tasks, which include sitting for the majority of the day, with only occasional walking or standing (Tr. 232). The ALJ gave Dr. Holman's opinion "significant weight" (Tr. 28-29). Dr. Etikerentse, an examining physician, echoed Dr. Holman's assessment, noting the plaintiff had pain with "prolonged standing, bending, and walking, especially for long periods of time" (Tr. 190). Further, the state agency reviewing physician, Dr. El-Ibiary, assessed the plaintiff as

12

capable of performing work at a much higher exertion level than the ALJ reasonably restricted the plaintiff to (Tr. 27-29, 192).

Based upon the foregoing, this court finds that the ALJ properly considered the plaintiff's credibility and reasonably concluded the plaintiff was not entirely credible.

***Vocational Expert***

At step five of the sequential evaluation process, the ALJ determined that based on the plaintiff's RFC for a full range of sedentary work and considering his age, education, and work experience, a finding of "not disabled" was directed by the Grids (Tr. 30; *see* 20 C.F.R. pt. 404, subpt. P, app. 2, § 201.23-29). The plaintiff argues that because he suffers from nonexertional impairments the ALJ erred by failing to obtain vocational expert testimony to address the vocational impact of the nonexertional impairments, both individually and in combination. Specifically, the plaintiff claims he suffers from pain, difficulty walking, difficulty standing, difficulty sitting, and drowsiness due to his medications.

"When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations," and therefore apply the Grids to determine if you are disabled. 20 C.F.R. § 404.1569a(b). Additionally, the Fourth Circuit Court of Appeals has stated: "We recognize that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids. The proper inquiry is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989).

As discussed above, the ALJ found the plaintiff's complaint of drowsiness due to his medications to be not credible. The ALJ found that sedentary work accommodated the plaintiff's pain and related limitations, and no other non-exertional limitations were

warranted. Substantial evidence supports that finding. Accordingly, the ALJ properly used the Grids to determine that the plaintiff was not disabled and was not required to take vocational expert testimony to make that determination. *See* 20 C.F.R. § 404.1569a(b); *Hays v. Sullivan*, 907 F.2d 1453, 1457 (4th Cir. 1990).

Based upon the foregoing, this allegation of error is without merit.

### *Evidence Submitted to Appeal Council*

As part of his appeal to the Appeals Council, the plaintiff submitted medical evidence from his visits with Dr. Holman after the ALJ's decision (Tr. 19). The Appeals Council considered the plaintiff's additional evidence, but found it insufficient to disturb the ALJ's decision (Tr. 16-20).

The treatment notes are essentially the plaintiff's monthly check-ups with Dr. Holman from February 2010 through July 2010 (Tr. 234-44). This court must review the record as a whole, including new evidence submitted to the Appeals Council, to determine whether substantial evidence supports the Commissioner's final decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

The evidence shows that Dr. Holman could not find an "etiology" for the plaintiff's subjective complaints (Tr. 237, 242). Dr. Holman found no cause for the plaintiff's back pain, and did not treat it (Tr. 235-36, 242). Overall, he found the plaintiff to be "doing reasonably well" with "slight[] improvement" (Tr. 241, 243). In March 2010, Dr. Holman included "malingering" in his differential diagnosis, along with "chronic pain" and "flare of foot pain from recent fall" (Tr. 236). Also in March 2010, Dr. Holman noted that "the likelihood that [the plaintiff] is going to be able to do any kind of gainful employment that would require him to stand for prolonged periods is quite low" (Tr. 236). This finding is consistent with the ALJ's RFC determination.

Based upon the foregoing, the Commissioner's final decision is based on substantial evidence.

## **CONCLUSION AND RECOMMENDATION**

This court finds that the Commissioner's decision is based upon substantial evidence and free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

                                                           s/ Kevin F. McDonald  
                                                           United States Magistrate Judge

November 21, 2011  
Greenville, South Carolina